1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES W. LEWIS,

11              Plaintiff,                    No. CIV S-05-1475 GEB DAD P

12       vs.

13   M. PEREZ, et al.,

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff, a state prisoner proceeding pro se, commenced this action on May 23,

17   2005, by filing a civil rights complaint in the United States District Court for the Northern

18   District of California.  The action was transferred to the United States District Court for the

19   Eastern District of California on July 22, 2005.  The case has been referred to the undersigned

20   magistrate judge in accordance with Local Rule 72-302 and 28 U.S.C. § 636(b)(1).

21              Plaintiff's complaint was accompanied by an application to proceed in forma

22   pauperis.  The application reveals that the average balance in plaintiff's prison trust account

23   during the six months preceding May 5, 2005, was $1,007.45.  The filing fee is $250.00.  The

24   undersigned will recommend that plaintiff's application be denied.

25              District courts are required to screen complaints brought by prisoners seeking

26   relief against a governmental entity or an officer or employee of such an entity.  See 28 U.S.C.

                                              1

1    § 1915A(a).  The court must dismiss a complaint if the prisoner has raised claims that are legally

2    "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary

3    relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1) and (2).

4            A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

5    Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

6    (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

7    indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

8    490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

9    pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

10   Cir. 1989); Franklin, 745 F.2d at 1227.

11           A complaint should be dismissed for failure to state a claim upon which relief

12   may be granted only if it appears beyond doubt that plaintiff can prove no set of facts in support

13   of the claims that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73

14   (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  For

15   purposes of reviewing a complaint under this standard, the court accepts as true the allegations of

16   the complaint.  See Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The

17   court also construes the pleading in the light most favorable to the plaintiff and resolves all

18   doubts in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

19           The Civil Rights Act under which this action was filed provides as follows:

20           Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the
21           deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at
22           law, suit in equity, or other proper proceeding for redress.

23   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

24   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

25   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

26   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

2

1  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

2  omits to perform an act which he is legally required to do that causes the deprivation of which

3  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

4        In the present case, plaintiff has sued Margarita Perez, as the commissioner and

5  chair of the California Board of Prison Terms ("BPT"), along with Arnold Schwarzenegger and

6  100 commissioners and deputy commissioners identified as J. Does #1 - #100.  Plaintiff seeks

7  only injunctive relief in the form of an order enjoining defendants "from 'continued reliance in

8  the future on an unchanging factor, the circumstance of the offense and conduct prior to

9  imprisonment.'" In this regard, plaintiff cites Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir.

10  2003), and Wilkinson v. Dotson, 544 U.S. 74 (2005).

11        Plaintiff alleges as follows:  He was convicted of first degree murder on October

12  25, 1977, and was sentenced to a term of life in state prison with parole eligibility after seven

13  years; his criminal history prior to 1977 consisted of convictions in 1960 for disturbing the peace

14  and statutory rape, a conviction in 1963 for petty theft, and convictions in 1966 for grand theft

15  and bank robbery; he has been eligible for parole release since July 12, 1984; prior to April 10,

16  1986, he was convicted of rule violations for possession of inmate-manufactured alcohol,

17  disobeying orders, possession of U.S. currency, and possession of marijuana; his behavior has

18  been exemplary since 1986; he had parole consideration hearings in 1983, 1985, 1986, 1987,

19  1988, 1989, 1990, 1992, 1995, 1996, 1997, 1998, 2000, 2001, and 2004; the Board found

20  plaintiff suitable for parole at the hearings on 2001 and 2004, but the 2001 proposed decision

21  was reversed by the governor on March 8, 2002, and the 2004 proposed decision was reversed by

22  the governor on February 8, 2005; each time parole has been denied, the denial was based on the

23  unchanging circumstances of plaintiff's offense and prior conduct.  Plaintiff asserts that

24  defendants' continued reliance on unchanging factors in his case is arbitrary, runs contrary to the

25  /////

26  /////

3

1   rehabilitative goals espoused by the prison system, and violates due process guarantees under the

2   Fourteenth Amendment.[1]

3           Plaintiff states that he is challenging procedures used in past parole consideration

4   hearings and that he is seeking relief concerning procedures to be used in future parole

5   consideration hearings.  Plaintiff argues that the injunction he seeks will not necessarily result in

6   his immediate or earlier release.

7           In Wilkinson v. Dotson, 544 U.S. 74, 76 (2005), the Supreme Court ruled that,

8   under certain circumstances, prisoners can challenge the constitutionality of state parole

9   procedures in actions under § 1983 seeking declaratory and injunctive relief.  In the Wilkinson

10  case, the plaintiffs were two Iowa state prisoners whose cases were consolidated by the Court of

11  Appeals for the Sixth Circuit.  One of the plaintiffs challenged the retroactive application of new,

12  harsher guidelines to his preguidelines case.  He contended that applying the new guidelines

13  violated his rights under the Ex Post Facto and Due Process Clauses.  He sought a declaration to

14  that effect and an injunction ordering prison officials to grant him a parole hearing in accordance

15  with the laws and rules that were in effect when he committed his crimes.  The second plaintiff

16  raised an Ex Post Facto challenge to the new guidelines and also alleged that due process

17  violations occurred at his first parole hearing; he sought a new parole hearing conducted under

18  constitutionally proper procedures and an injunction ordering the state to comply with

19  constitutional due process and ex post facto requirements in the future.  Id. at 77.  The Supreme

20  Court found that the connection between the constitutionality of the prisoners' parole

21  proceedings and their release from confinement was tenuous.  Id. at 78.  The Court concluded

22  that " § 1983 remains available for procedural challenges where success in the action *would not*

23  *necessarily* spell immediate or speedier release for the prisoner."  Id. at 81.

24  ───────────────

25      [1]  The undersigned notes that plaintiff's dispute is not necessarily with the actions of the
    Parole Board.  The Board found him suitable for parole in 2001 and 2004 with the governor
26  reversing those decisions based on the unchanging circumstances of plaintiff's offense and prior
    conduct.

4

1    In the present case, plaintiff seeks to "[e]njoin defendants from 'continued

2  reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior

3  to imprisonment,' per Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003)."  The relief requested

4  would not necessarily spell his immediate or speedier release and therefore may be sought in an

5  action brought pursuant to § 1983.

6    The undersigned finds, however, that <u>Biggs</u> does not provide a basis for the order

7  plaintiff seeks.  In <u>Biggs</u>, the Ninth Circuit affirmed the district court's denial of a California

8  state prisoner's habeas petition challenging the Board of Prison Terms' failure to find him

9  suitable for parole.  The court observed that

10       California law allows the Board to consider a myriad of factors
         when weighing the decision of granting or denying parole.  Parole
11       may be denied if the Board "determines that the gravity of the
         current convicted offense or offenses, or the timing and gravity of
12       current or past convicted offense or offenses, is such that
         consideration of the public safety requires a more lengthy period of
13       incarceration for [the] individual."  Cal. Penal Code § 2041(b).
         Additionally, the Board can consider all relevant information
14       including potential threats to public safety, whether the offense was
         carried out in a manner which demonstrates exceptionally callous
15       disregard for human life, and whether the prisoner engaged in
         misconduct while in jail.  15 Cal. Code of Regs. § 2402(c)(6); <u>see</u>
16       <u>In re Ramirez</u>, 94 Cal. App. 4th 549, 565-67, 114 Cal. Rptr. 2d 381
         (2001).

17

18  334 F.3d at 915.  The court agreed that "many of the conclusions reached and factors relied upon

19  by the Board [in Biggs' case] were devoid of evidentiary basis," but

20       the district court was correct in finding that in spite of the fact that
         several of the Board's findings were unsupported, there was some
21       evidence supporting the Board's decision that Biggs is not entitled
         to relief at this time.  Section 3041(b) allows the gravity of the
22       offense to be considered in requiring a period of longer
         incarceration.  The murder of which Biggs was convicted involved
23       killing a witness in a manner which exhibited a callous disregard
         for life.  Under a ruse, the co-conspirators tricked the witness into
24       believing they were taking him out of state, and then they
         bludgeoned him to death.  While Biggs did not commit the murder
25       himself, he was intertwined with the conspiracy from the very
         beginning.

26  /////

1   Id. at 916.  The Board's "sole supportable reliance on the gravity of the offense and conduct prior

2   to imprisonment" justified denial of parole in 1999, despite the evidence that Biggs was a model

3   inmate who had made many gains in prison following his conviction in 1985.  Id. at 912 & 916.

4          The Ninth Circuit observed that "[o]ver time, however, should Biggs continue to

5   demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply

6   because of the nature of Biggs' offense and prior conduct would raise serious questions involving

7   his liberty interest in parole."  Id. at 916.  Describing due process as "a delicate process of

8   adjustment inescapably involving the exercise of judgment by those whom the Constitution

9   entrusted with the unfolding of the process," the court concluded that "continued reliance in the

10  future on an unchanging factor, the circumstance of the offense and conduct prior to

11  imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could

12  result in a due process violation."  Id. at 917.

13         Biggs did not hold that the Board can be prohibited from considering an

14  unchanging factor after a specific number of years or a certain number of parole consideration

15  hearings.  Biggs did not hold that federal courts can enjoin the Board from considering factors it

16  is authorized to consider under state law.  While continued reliance on an unchanging factor may

17  raise serious questions, it appears that those questions should be considered in the context of a

18  particular decision to deny parole, as they were in Biggs.[2]

19         The undersigned finds that plaintiff's civil rights complaint fails to state a claim

20  upon which relief can be granted under § 1983.  The authority relied upon by plaintiff does not

21  permit this court to enjoin the defendants from considering plaintiff's conviction and criminal

22  history in future parole consideration hearings.

23  /////

24  /////

25  ─────────────

26         [2]  Thus, plaintiff may seek habeas relief challenging a particular decision to deny him
    parole.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's May 23, 2005 application to proceed in forma pauperis be denied;

2.  Plaintiff's May 23, 2005 motion for order directing service to be effected by a United States Marshal be denied; and

3.  This action be dismissed for failure to state a claim upon which relief may be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 13, 2006.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
lewi1475.56